# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8374 | **DATE** | April 16, 2002 |
| **CASE TITLE** | Gloria Alicea-Hernandez v. Archdiocese of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion to Dismiss

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum and Opinion Order, this Court GRANTS defendant's motion to dismiss [7-1]. The complaint is dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(1) for lack of federal subject matter jurisdiction. The case is terminated. The parties are to bear their own costs.

(11) ■ [For further detail see reverse side of original minute order.]

| X | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 1 8 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | 10 |
| | Copy to judge/magistrate judge. | | | |
| mds(lc) | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GLORIA ALICEA-HERNANDEZ, | ) | APR 1 8 2002 |
| Plaintiff, | ) | |
| v. | ) NO. 01 C 8374 | |
| ARCHDIOCESE OF CHICAGO, | ) HONORABLE DAVID H. COAR | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Gloria Alicea-Hernandez, has brought this *pro se* civil action pursuant to 42 U.S.C. § 2000e. The plaintiff claims that the defendant, the Archdiocese of Chicago, discriminated against her on the basis of her sex and national origin and retaliated against her in violation of Title VII. More specifically, the plaintiff, who is Hispanic, alleges that she was subjected to different terms and conditions of employment than American-born employees, that she was harassed and excluded from meetings and training sessions; that she was summarily discharged after she filed charges with the Equal Employment Opportunity Commission ("EEOC"), and that she was replaced by a less qualified Hispanic male who received a higher salary. The defendant has moved to dismiss the complaint for lack of subject matter jurisdiction. For the foregoing reasons, defendant's motion is GRANTED.

### I. Standard of Review

It is well established that courts should construe *pro se* complaints liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972), *reh'g denied*, 405 U.S. 948 (1972); see also McCormick v. City of Chicago, 230 F.3d 319, 325 (7th Cir. 2000). In ruling on a motion to dismiss for lack of

/0

subject matter jurisdiction, the Court must accept all well-pleaded allegations in the complaint as true, viewing all facts--as well as any inferences reasonably drawn therefrom--in the light most favorable to the plaintiff. Sapperstein v. Hager, 188 F.3d 852, 855 (7th Cir. 1999). Further, in a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court may consider evidentiary materials outside the pleadings that address the jurisdictional question without treating the motion as one for summary judgment. See, e.g., United Transp. Union v. Gateway Western Ry. Co., 78 F.3d 1208, 1210 (7th Cir. 1996); Capitol Leasing Co. v. F.D.I.C., 999 F.2d 188, 191 (7th Cir. 1993). Dismissal should be denied whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by the plaintiff. Jones v. Edgar, 3 F. Supp. 2d 979, 980 (C.D. Ill. 1998).

Nevertheless, the plaintiff has the obligation to establish jurisdiction by competent proof. Commodity Trend Service, Inc. v. Commodity Futures Trading Comm'n, 149 F.3d 679, 685 (7th Cir. 1998). The presumption of correctness accorded to a complaint's allegations falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question. Sapperstein, 188 F.3d at 855-56, *citing* Commodity Trend Service, Inc., 149 F.3d at 685. Dismissal is proper if it appears beyond doubt that the plaintiff cannot prove any set of facts consistent with the pleadings that would entitle her to the relief requested. Amoakowaa v. Reno, 94 F. Supp. 2d 903, 905 (N.D. Ill. 2000), *relying on* Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II. Background

The plaintiff, Gloria Alicea-Hernandez, a Hispanic female, was hired as Hispanic Media Manager (her title was later changed to Communications Manager, at her request) for the

Archdiocese of Chicago on March 28, 2000. (EEOC Charge of Discrimination [charge #210A11127], attached to the complaint as an unmarked exhibit). As Communications Manager, the plaintiff's duties included: (1) promoting Church events and activities by working with the bishop and Ethnic Ministries Office of Hispanic-American Relations; (2) developing relationships with Hispanic parishes to promote Church-related activities; (3) composing and translating articles for Church publications; (4) assisting the Cardinal in composing and translating correspondence; and (5) generally assisting the Archdiocese in communicating the Church's message within the Hispanic community. (Defendant's Exhibit A, Affidavit of James Dwyer, Director of the Office of Communications, ¶ 4; Defendant's Exhibit B, Position Description).

Three months after joining the Archdiocese, the plaintiff began to attack the Church's "unfair hierarchical structure" and the "racist attitudes" held by "people in the highest positions." (Defendant's Exhibit C, 7/1/00 e-mail). On July 25, 2000, an unnamed church warned the plaintiff not to communicate with anyone outside the "department" regarding internal church matters. (EEOC Charge #210A11127, attached to complaint).

On August 7, 2000, the plaintiff wrote a twenty-eight page memo to numerous church officials entitled "Racism in the Communications Department and Institutional/Structural Racism in the Archdiocese of Chicago." (Defendant's Exhibit D). The plaintiff also accused the Church of "neglect[ing] the needs and issues of Hispanic Catholics" and of "mismanag[ing] programs and resources that purport to serve the Hispanic Catholic community." (Id. at p. 2). The plaintiff faulted the Church for causing "eruptions of pain and anger in the Hispanic community" which purportedly left the Hispanic community to "atrophy spiritually." (Id. at p. 1). The plaintiff

3

called the Chicago Archdiocese "one of the most backward dioceses in the nation in the area of Hispanic communications" and asserted that the Communications Department was unresponsive to and uninterested in the Hispanic community's needs. (Id. at p. 11). The plaintiff accused the Church of failing to allocate sufficient resources to Hispanic Catholics; failing to develop sufficiently Hispanic religious teachings; and failing to properly market Catholic schools within the Hispanic community. (Id. at p. 12, *et seq.*).

On August 21, 2000, the plaintiff filed a charge of discrimination with the EEOC. (EEOC Charge #210A11127; see also EEOC charge #210A04436 attached to complaint). After receiving assurances from the defendant that her allegations would be "addressed appropriately," the plaintiff withdrew her EEOC complaint. (EEOC charge #210A11127).

On September 25, 2000, the plaintiff tendered her resignation, to be effective December 30, 2000. (EEOC charge #210A11181 Amended, attached to complaint; see also Defendant's Exhibit G, resignation letter).

In or around early November 2000, the plaintiff submitted a second letter of resignation, citing continued discrimination and a hostile work environment. (EEOC charge #210A11181 Amended, attached to complaint). The plaintiff filed another EEOC charge on December 18, 2000. (Id.; EEOC Charge #210A11127).

On December 19, 2000, the plaintiff offered to temporarily withdraw her resignation. (Id.; see also Defendant's Exhibit H, Plaintiff's 12/19/00 e-mail). The Archdiocese declined the plaintiff's offer. (Defendant's Exhibit I, Memo to Plaintiff from Director of Human Resources). [The plaintiff characterizes the defendant's decision not to allow her to withdraw her resignation as a "summary discharge."] The plaintiff filed additional charges with the EEOC on January 9,

4

2001, and March 9, 2001. (EEOC charge numbers 210A11359 and 210A12200, attached to complaint).

The EEOC issued right-to-sue letters on July 31, 2001. This suit followed.

### III. Discussion

Even accepting the plaintiff's factual allegations as true, the Court finds that her claims are barred by the Free Exercise Clause of the First Amendment. Courts consistently have recognized the fundamental right of churches to decide for themselves, free from governmental interference, matters of church government as well as those of faith and doctrine. See EEOC v. Catholic Univ. of America, 83 F.3d 455, 461 (D.C. Cir. 1996). In the case at bar, plaintiff's job involved spreading the Church's message to the Hispanic community. Because the thrust of plaintiff's complaint is that the Chicago Archdiocese mistreats its Hispanic adherents and employees, the court is precluded from interfering in the dispute.

The Supreme Court has long held that civil courts are not the proper forum to decide matters of ecclesiastical concern. See e.g., Watson v. Jones, 80 U.S. (13 Wall.) 679 (1871) (refusing to intervene in a property dispute between two church factions); Gonzalez v. Roman Catholic Archbishop, 280 U.S. 1, 16 (1929) (noting that the decision of whether to appoint a chaplain is a canonical act exempt from judicial review); Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am., 344 U.S. 94 (1952) (declaring unconstitutional a New York statute which had the effect of displacing one church administrator with another). Under the Watson line of cases, the First Amendment severely limits the role civil courts play in resolving disputes within a church.

While the dispute in Watson was over property, the Court's rationale is not confined to property disputes, but it also applies to civil rights cases arising from disputes between religious institution and its ministers. "This principle [of requiring civil court to refrain from deciding religious doctrinal disputes] applies with equal force to church disputes over church polity and church administration." Serbian Eastern Orthodox Diocese for United States of America and Canada v. Milivojevich, 426 U.S. 696, 710 (1976) (applying the Watson rule to a Bishop's defrockment); McClure v. Salvation Army, 460 F.2d 553, 560 (5th Cir.), *cert. denied*, 409 U.S. 896 (1972) ("application of the provisions of Title VII to the employment relationship existing between . . . a church and its minister [] would result in an encroachment by the State into an area of religious freedom which it is forbidden to enter by the principles of the free exercise clause of the First Amendment").

The Fifth Circuit's opinion in McClure established what has become known as the "ministerial exception" to Title VII employment discrimination cases. Since McClure, the courts have generally applied the ministerial exception to bar Title VII claims against religious organizations. See e.g., Young v. Northern Illinois Conference of United Methodist Church, 21 F.3d 184 (7th Cir. 1994) (affirming the dismissal of a probationary minister's Title VII claims of race discrimination, sex discrimination, and retaliation); EEOC v. Roman Catholic Diocese, 213 F.3d 795, 800 (4th Cir. 2000); Bollard v. California Province of the Society of Jesus, 196 F.3d 940, 948 (9th Cir. 1999); Gellington v. Christian Methodist Episcopal Church, Inc., 203 F.3d 1299, 1304 (11th Cir.2000). The Church possesses the "freedom to select those who will carry out its religious mission." Catholic University of America, 83 F.3d at 461.

The ministerial exception is not necessarily limited to ordained clergy. See EEOC v. Catholic University of America, 83 F.3d 455, 461 (D.C. Cir. 1996). Application of the ministerial exception does not depend on ordination but upon the function of the position. Young, 21 F.3d at 186; Rayburn v. General Conference of Seventh-Day Adventists, 772 F.2d 1164, 1168-69 (4th Cir. 1985) (holding that district court correctly granted summary judgment in Title VII case brought by a non-ordained woman who was denied a pastoral position because her suit was barred by the ministerial exception); see also EEOC v. Southwestern Baptist Theological Seminary, 651 F.2d 277, 283 (5th Cir. 1981) (Title VII claims of non-ordained faculty at Baptist seminary were barred by the ministerial exception); EEOC v. The Roman Catholic Archdiocese of Raleigh, 213 F.3d 795 (4th Cir. 2000) (non-ordained music director); Starkman v. Evans, 198 F.3d 173 (5th Cir. 1999), *cert. denied*, 531 U.S. 814 (2000) (non-ordained choir director). Further, applicability of the ministerial exception is a question of law for the court. EEOC v. Southwestern Baptist, 651 F.2d at 285; Guinan v. Roman Catholic Archdiocese of Indianapolis, 42 F. Supp. 2d 849, 852 (S.D. Ind. 1998).

The ministerial exception has been extended to "lay employees of religious institutions 'whose primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order or participation in religious ritual and worship.'" Catholic University, 83 F.3d at 461 (*quoting* Rayburn, 772 F.2d at 1169). "This approach necessarily requires a court to determine whether a position is important to the spiritual and pastoral mission of the church." Rayburn, 772 F.2d at 1169.

Limits to the "ministerial exception" to Title VII have been articulated in cases where the plaintiff is a church employee who performs a secular function, rather than a clergy member

7

performing religious functions. For example, in <u>EEOC v. Fremont Christian School</u>, 781 F.2d 1362 (9th Cir. 1986), the Ninth Circuit refused to apply the ministerial exception to the employment relationship between a "church-owned and operated private school" and one of its teachers, because "the duties of the teachers at [the school] do not fulfill the function of a minister." 781 F.2d at 1370. And in <u>EEOC v. Pacific Press Publishing Association</u>, 676 F.2d 1272 (9th Cir. 1982), the court refused to apply the "<u>McClure</u> exception" because it concluded that an editorial secretary "did not fulfill the function of a minister, nor was her employment . . . the type of critically sensitive position within the church that <u>McClure</u> sought to protect." 676 F.2d at 1278.

In the case at bar, the plaintiff, as Hispanic Communications Manager, was responsible for promoting the Church and spreading its message within the Hispanic community (among other, partly clerical, duties). The plaintiff's job essentially required her to be a cheerleader of sorts for the Church in the Hispanic community. The plaintiff's position was therefore "important to the spiritual and pastoral mission of the church," <u>see</u> <u>Young</u>, 21 F.3d at 186, and required her to act "as a liaison between the church and [those] it [seeks] to reach," <u>see</u> <u>Bryce v. Episcopal Church</u>, 121 F. Supp. 2d 1327, 1340 (D. Col. 2000). Given the nature of the plaintiff's position, her Title VII claims are barred by the First Amendment.

The nature of the plaintiff's claims likewise precludes federal subject matter jurisdiction. The plaintiff was a highly vocal critic of the Church's perceived attitudes and outreach toward the Hispanic community. The plaintiff contends that the Archdiocese treated her as a "second-class" employee because she was Hispanic and ignored the needs of the Hispanic community in general. Because the plaintiff's claims revolve around allegedly broad discrimination against her

personally and against Hispanic employees and parishioners in general, this case would require the Court to choose among competing religious viewpoints. Since this case involves ideological differences of opinion concerning the internal affairs of the Catholic Church, the Court finds as a matter of law that the complaint must be dismissed for lack of federal subject matter jurisdiction.

In sum, under the First Amendment, the Court lacks subject matter jurisdiction over the plaintiff's Title VII claims. The plaintiff's position as an Hispanic Communications Manager essentially involved spreading the Church's message to the Hispanic community. Furthermore, the plaintiff's dispute with the church basically relates to religious differences of opinion relating to the internal workings of the Archdiocese and its treatment of Hispanics minority. Therefore, the Church's employment decisions are outside the purview of federal jurisdiction. If the plaintiff seeks redress, she must avail herself of the appropriate church tribunal.

IT IS THEREFORE ORDERED that the defendant's motion to dismiss (docket #7) is GRANTED. The complaint is dismissed without prejudice for lack of federal subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). The case is terminated. The parties are to bear their own costs.

**ENTER:**

_____

**DAVID H. COAR**

**United States District Judge**

**DATED: April 16, 2002**